SMILIE v. HOBBS & a.

Sufficiency of certain evidence considered.

ASSUMPSIT, upon a warranty of a steam-heating boiler.  Facts found by the court.

The defendants, by their agent Chesley, at the time of the sale, warranted the boiler to be durable, meaning, as both parties understood, that with proper usage it would last and do good service twenty or thirty years.  The defendants excepted that there was no competent evidence to sustain the finding either of the warranty, or of the authority of Chesley to make it, and that the finding was against the weight of evidence.

*L. S. Morrill*, for the defendants.

*Bingham & Mitchell*, for the plaintiff.

SMITH, J.   There was competent evidence to sustain the finding of warranty, and of authority in Chesley to make it, and the findings are not against the weight of evidence.   Among the "requirements of a good steam-heating apparatus" in the defendants' printed descriptive pamphlet is the following: "12th. It [the boiler] should be DURABLE in construction, and not liable to require early repairs."   The plaintiff testified that Chesley, the defendants' agent, gave him a copy of their pamphlet, and warranted the boiler to be everything stated in the pamphlet, and everything claimed for it; that it would last his life-time.   Chesley testified that he warranted the capacity only of the boiler, and not its durability, and had no authority to warrant durability.   But on cross-examination he testified that he warranted the boiler as described in the price-list and pamphlet.   The price-list contains a warranty of capacity.   The defendants testified that Chesley had no authority to warrant the durability of the boiler.

If Chesley warranted the boiler as described in the pamphlet, the plaintiff might reasonably understand that durability was included.   Durability is prominently mentioned in the pamphlet as one of the requirements of a good boiler; and without this quality all other qualities would be comparatively valueless.   The manifest purpose of the defendants in advertising durability, so prominently displayed as one of the qualities of their boilers, was to recommend them to purchasers.   The fact that they furnished the plaintiff, through their agent, with a copy of their pamphlet, is evidence from which his authority to warrant durability might be inferred.   No reason appears why the line of his authority should be drawn at capacity, or why he should be authorized to say, in effect, to purchasers, "Some of these representations are true: as to others I am not permitted to speak."   The representations

of the defendants, contained in their pamphlet and distributed by their authorized agent, are as binding upon them as though orally made by them to a purchaser, or included in a bill of sale. The presumption that the defendants were acting in good faith might well be the basis of the further presumption of authority in their agent to warrant their goods to be all that they had represented them to be in their descriptive pamphlet, or to be what they represented as desirable and essential requirements of a good heating apparatus, the object of the pamphlet being to recommend their goods to the favorable consideration of purchasers.

But there was further evidence of warranty and authority. In the plaintiff's letter of February 15, after expressing his fears that the capacity of the boiler will not prove equal to his wants, he adds,—"He [Chesley] said there was a printed guaranty with the boiler.   *   *   *.  I have seen no printed guaranty.  I am ready to remit the $130.50, only I want to have you state to me in writing a guaranty as to the materials and manufacture of the boiler being first class, and as to its capacity, as represented by Mr. Chesley.  If this boiler is constructed of good material, and thoroughly made, and will do the work (that is, is of the capacity) in as economical a manner when supplied with the amount of radiation Mr. C. said it would carry, as it does the work it is now doing, I am satisfied."

The defendants not only did not deny that Chesley had authority to warrant the durability of the boiler, but in their reply of February 16 said,—"Our boilers are made of the best materials, and warranted in every way as a low-pressure boiler." It is objected that if this is a warranty of durability, it was made some three months after the contract of sale was made and concluded, and is void for want of consideration. However this may be, the defendants' omission to deny authority in Chesley to warrant durability, and their compliance with the plaintiff's request for a written guaranty, if not an admission of an authorized warranty by Chesley, are evidence from which it was competent to find such a warranty. Additional significance might attach to their letter from the fact that payment had not then been made, but would be made as soon as the guaranty should be received. It might be inferred that the defendants permitted the plaintiff to pay, resting in the belief that they assented to his claim that Chesley had warranted the boiler in respect to durability by authority.

It is argued that the plaintiff would not have called for the written guaranty if Chesley had warranted the durability of the boiler at the time of the sale. This objection goes only to the weight to be given the evidence furnished by the correspondence. Besides, it is apparent the plaintiff desired a ratification by the defendants of Chesley's representations, then resting in parol, or a written guaranty, to remove all conflict which might arise from the uncertain memories of himself and Chesley.

The same observations are applicable to the correspondence in March, 1885. The defendants' silence in their reply in regard to the plaintiff's claim as to warranty of durability, thorough workmanship, and the best of materials, is evidence from which a warranty by authority may be inferred. *Bailey* v. *Woods*, 17 N. H. 365; *Clement* v. *Clement*, 8 N. H. 472. The plaintiff made a claim upon them to be made whole; and although there is no estoppel from their neglect to deny the validity of his claim, yet their silence is evidence upon the question of warranty and authority.

The trier of the facts might find the parties understood a boiler "durable in construction" would last as long as Chesley asserted; and there was evidence that a good steam-heating boiler, with fair usage, would last twenty or thirty years.

*Exceptions overruled.*

CARPENTER, J., did not sit: the others concurred.